UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PEDRO RUIZ,

    Petitioner,

v.

STUART RYAN,

    Respondent.

Case No. 17-cv-06572-WHO (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

## INTRODUCTION

Petitioner Pedro Ruiz seeks federal habeas relief from his state convictions for sex crimes against a minor on grounds that trial and appellate counsel rendered ineffective assistance. Because the state court's rejection of his claims was reasonable, the petition for federal habeas relief is DENIED.

## BACKGROUND

Ruiz had sex with a 12-year-old, Jane Doe, his friend's sister. The facts were summarized by the state appellate court:

> In November 2014, Jane Doe's brother played in a band with 24-year-old [Ruiz]. Jane Doe, who was 12 years old, had watched the band practice.
>
> On the evening of November 16, 2014, Jane Doe's parents and brother went to a party at their apartment complex. Jane Doe was supposed to attend the

party. When her family members left for the party, she was using the family computer and said she would be at the party in a few minutes. After they arrived at the party, Jane Doe's father and brother saw [Ruiz]'s car drive into the apartment complex. After a few minutes, [Ruiz]'s car exited the apartment complex.

Jane Doe's family members noticed that Jane Doe had not joined them at the party. Jane Doe's mother went to the family's apartment to get Jane Doe, but Jane Doe was not there. Jane Doe's brother checked the family computer, and he saw Facebook messages that [Ruiz] and Jane Doe had exchanged. In the messages, [Ruiz] said he wanted to see Jane Doe and would meet her in 10 minutes.

Jane Doe's father, mother, and brother got into the family car and looked for Jane Doe. They eventually saw [Ruiz]'s car parked in a parking lot. Jane Doe's father opened [Ruiz]'s car door. [Ruiz] was lying on top of Jane Doe in the reclined passenger seat, and he and Jane Doe were both naked. [Ruiz] was positioned "in between" Jane Doe's legs. Jane Doe's father grabbed and held [Ruiz]. [Ruiz] was sweaty and slippery, and [Ruiz] said that 'she wanted it.' Jane Doe's brother saw a police car and flagged it down. Jane Doe's brother told the police officer inside the car that his sister was being 'raped.' The police officer arrested [Ruiz] and took him to the police station.

Jane Doe refused to speak with the police or her family members about what had happened with [Ruiz]. She did not testify at trial.

(Ans., State Appellate Opinion, Dkt. No. 9-11 at 3-4.)[1]

Ruiz confessed to police that he had had sex with Jane Doe; he knew she was a minor under the age of 14; they had been in a boyfriend-girlfriend relationship for four months; he knew the relationship was wrong; they had arranged to meet on November 16; he had touched her vagina and kissed her before November 16; and he had sent her through Facebook a photograph of his penis. (*Id.* at 4.)

Messages Ruiz and Doe sent to each other through Facebook were presented at trial. In his messages, Ruiz (i) acknowledges he could be put "in jail for 15 years for being with a minor girl"; (ii) states that he "like[d] her tasty thing" and asked to "touch it well next time"; (iii) asks Doe to shower with him; and (iv) states Doe makes him "want to make love" to her. (*Id.* at 5.)

---

[1] *People v. Ruiz*, No. H042398, 2016 WL 3610870, at *1 (Cal. Ct. App. Jun. 28, 2016).

2

In 2015, a Monterey County Superior Court jury convicted Ruiz of committing lewd acts with a child under the age of 14, contacting a minor with intent to commit a sexual offense, and arranging to meet and meeting a minor with intent to commit a sexual offense. (*Id.* at 2.) A sentence of 12 years in state prison was imposed. (*Id.*) Ruiz's attempts to overturn the decision in state court were unsuccessful. This federal habeas petition followed.

As grounds for federal habeas relief, Ruiz claims (i) defense counsel rendered ineffective assistance, particularly when *Miranda*, jury instruction, and Confrontation Clause issues arose; and (ii) appellate counsel rendered ineffective assistance.

## STANDARD OF REVIEW

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), this Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412–13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at

413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

## DISCUSSION

Ruiz claims that his trial counsel was ineffective for failing to (a) have his confession suppressed based on his alleged invocation of silence during his arrest; (b) have his confession suppressed based on his invalid waiver of his *Miranda* rights during interrogation; (c) challenge jury instructions; and (d) raise a Confrontation Clause objection. He also alleges that (e) appellate counsel rendered ineffective assistance by failing to raise Claims a–d on direct appeal.

To prevail on a claim of ineffectiveness of counsel, a petitioner must establish that (1) counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms, *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984), and (2) he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. When the defendant is challenging his conviction, the appropriate question is "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (citing *Strickland*, 466 U.S. at 693).

The standards of 28 U.S.C. § 2254(d) and *Strickland* are "highly deferential . . . and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (quotation marks and citations omitted). "The question [under § 2254(d)] is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that

4

counsel satisfied *Strickland*'s deferential standard." *Id.*

Ruiz's claims were not raised on direct appeal, but rather only on collateral review to the state supreme court, which summarily denied the claims. (Ans., Dkt. No. 9-13 at 131.) When presented with a state court decision that is unaccompanied by a rationale for its conclusions, a federal court must conduct an independent review of the record to determine whether the state court decision is objectively unreasonable. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000). This review is not de novo. "[W]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

### a. Body Camera Footage

Ruiz claims that his defense counsel rendered ineffective assistance by failing to examine the arresting officer's body camera footage of his arrest. He contends that this failure prevented her from knowing that during the arrest Ruiz had invoked his right to remain silent. Had she known this, she would have been able to have his confession suppressed. Had the confession been suppressed, he would not have been found guilty of putting his penis inside Jane Doe, the act that constituted the predicate offense of Count 1.[2] (Pet., Dkt. No. 1 at 18.)

Ruiz's argument lacks factual support. Defense counsel moved to exclude this same footage, so the claim that counsel failed to review the footage is wrong. (Ans., Clerk's Transcript, Dkt. No. 9-3 at 57-58.) The motion was withdrawn after the prosecutor announced he would not present the footage at trial. (*Id.*, Reporter's Transcript, Dkt. No. 9-6 at 26.) Ruiz's claim is premised on the mistaken belief that because the prosecution declined to present the body camera footage, the recording was never disclosed to the defense. (Ans., Dkt. No. 9-1 at 15.) The footage was sent to defense counsel, as noted in

---

[2] Ruiz was charged with four counts of lewd acts with a child: Count 1 (described as "inserting his penis into her vagina"); Count 2 (touching vagina); Count 5 ("rubbing her vagina with his hand"); and Count 6 ("kissing"). (Ans., State Appellate Opinion, Dkt. No. 9-11 at 2.)

5

the motion to exclude (*id.*, Dkt. No. 9-3 at 58), and was the subject of that motion.

Accordingly, Ruiz's claim lacks merit. He has not shown that counsel's performance was deficient; the record indicates that she did review the footage and moved to exclude it. Ruiz's conclusory assertion that she did not is insufficient in the context of this record. *Young v. Gipson*, 163 F. Supp. 3d 647, 689 (N.D. Cal. 2015) (petitioner's conclusory assertion that counsel failed to review evidence is insufficient to show ineffective assistance).

Nor could he show prejudice. Evidence other than his confession — the eyewitness accounts of Jane Doe's father and brother, who both testified at trial — provided sufficient evidence that he had vaginal sex with Doe. After opening the car door, Ruiz was seen "lying on top of Jane Doe in the reclined passenger seat" positioned "in between her legs." Both were "naked." Ruiz, who was "sweaty and slippery," declared that Doe "wanted it." Doe's brother told the police officer he had flagged down that his sister was being "raped." This testimony, along with Ruiz's Facebook messages to Doe, provide grounds for the state court to reject the contention that but for the confession, there was a reasonable probability that the factfinder would have had a reasonable doubt respecting guilt.

After conducting an independent review of the record, I conclude that the state court's rejection of this claim was reasonable and is entitled to AEDPA deference. The claim is DENIED.

### b. Waiver of Miranda Rights

Ruiz claims counsel rendered ineffective assistance by failing to have his confession suppressed because he did not waive his *Miranda* rights. The transcript records that he said, "Uh-hum," in response to questions about whether he understood his *Miranda* rights. Counsel, Ruiz alleges, was ineffective for failing to argue that Ruiz did not knowingly and intelligently waive his right against self-incrimination. (Pet., Dkt. No. 1 at 24.)

Ruiz's interrogation was conducted in Spanish. The interrogating officer told Ruiz that he would be informed of his rights before questioning began. (Ans., Interrogation

6

Transcript, Dkt. No. 9-3 at 119-120.) Ruiz answered, "Yes." (*Id.* at 120.) He was then told he had the right to remain silent, to which he responded, "Uh-hum." (*Id.*) When told that anything he said could be used in court, he said, "Uh-hum." (*Id.*) He was then advised of his right to an attorney and his other *Miranda* rights. (*Id.*) When asked whether he understood his rights as they had been read to him, he nodded. (*Id.*, Reporter's Transcript, Dkt. No. 9-4 at 10.) The interrogating officer responded, "Yes? Ok," as petitioner continued to nod.[3] (*Id.*, Interrogation Transcript, Dkt. No. 9-3 at 120; Reporter's Transcript, Dkt. No. 9-4 at 10.)

At no time during the interrogation did Ruiz invoke his rights or indicate that he did not understand them. In fact, later in the interrogation he reaffirmed that he understood his rights. There was a pause in the interrogation when the officer left the room for a while. (*Id.*, Interrogation Transcript, Dkt. No. 9-3 at 147.) When the officer returned, he asked Ruiz whether he remembered the rights that had been read to him earlier. Ruiz said, "Yes." (*Id.*) When asked whether he needed to have the rights read to him again, he said, "No, we're good." (*Id.*) The interrogation continued; Ruiz answered all the questions he was asked. (*Id.*)

Ruiz claims that he did not waive his *Miranda* rights. A person subjected to custodial interrogation must be advised that "he has the right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Once properly advised of his rights, an accused may waive them voluntarily, knowingly, and intelligently. *See id.* A valid waiver of *Miranda* rights depends upon the totality of the circumstances. "The waiver inquiry 'has two distinct dimensions': waiver must be 'voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception,' and 'made with a full awareness of both the nature of the right being

---

[3] The transcript has Ruiz saying "Yes. Ok." in response to the officer's question about whether petitioner understood his rights as read. (Ans., Interrogation Transcript, Dkt. No. 9-3 at 120.) The parties agree that it was the officer who said "Yes. Ok," not Ruiz. (Ans., at 10 n.6; Pet., Dkt. No. 1 at 26.)

abandoned and the consequences of the decision to abandon it.'" *Berghuis v. Thompkins*, 560 U.S. 370, 382-83 (2010) (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). The waiver may be implied by conduct, and need not be explicit or written. *Id.* at 383.

"Where the prosecution shows that a *Miranda* warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent." *Berghuis*, 560 U.S. at 384. The law presumes that an individual who fully understands his rights and acts in a manner inconsistent with them has made "a deliberate choice to relinquish the protection those rights afford." *Id.* at 385; *see, e.g., United States v. Younger*, 398 F.3d 1179, 1186 (9th Cir. 2005) (finding implied waiver based on evidence that after defendant was advised, but before questioning, he made a spontaneous statement and responded to further questions without reference to counsel).

Nothing in the record indicates that Ruiz did not understand his *Miranda* rights, or that he invoked these rights, or that did not waive his rights. Indeed, his contention that he did not waive his rights indicates that he heard and understood them. The government, then, has shown that (i) the *Miranda* warnings were given; (ii) Ruiz understood his rights; and (iii) he made "a deliberate choice to relinquish the protection those rights afford." His interpretation of his "Uh-hum" is a thin basis on which to premise a lack of waiver (or invocation of rights) and is unsupported by anything else in the record.

The facts in this case are similar to the facts in *United States v. Hurtado*, 421 F. Supp. 3d 1036 (N.D. Cal. 2014), where the defendant's "mhmm" given in response to *Miranda* warnings "unambiguously communicated an affirmative response to the officer's question." *Id.* at 1041. Defendant's answers to questions after the *Miranda* warnings had been given also constituted a "course of conduct indicating waiver." *Id.* at 1042. In light of *Hurtado* and the other legal authorities cited above, Ruiz's "Uh-hum" is insufficient to meet his burden to show that "there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98. Because Ruiz has not shown that he invoked (or did not waive) his rights, his claim of ineffective assistance necessarily fails.

8

1  Furthermore, the erroneous admission of a coerced confession is subject to harmless error analysis. *Fulminante v. Arizona*, 499 U.S. 279, 306-12 (1991). In other words, habeas relief is appropriate only if the coerced confession had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). The eyewitness accounts provided by Doe's father and brother, along with Ruiz's Facebook messages to Doe, provided substantial evidence of guilt. Even without the confession, the jury had sufficient evidence on which to base its verdicts.

After conducting an independent review of the record, I conclude that the state court's rejection of this claim was reasonable and is entitled to AEDPA deference. The claim is DENIED.

### c. Jury Instructions

Ruiz claims that a certain jury instruction (CALCRIM No. 1110) was flawed and that counsel was ineffective for failing to challenge the flawed instruction. According to Ruiz, the instruction wrongly allowed the jury to convict him of lewdly touching a child even if the touching itself was not lewd. (Pet., Dkt. No. 1 at 29.)

CALCRIM No. 1110 was given to the jury to guide its deliberations on whether Ruiz was guilty of committing lewd and lascivious acts (Cal. Penal Code § 288). Section 288, as explained by No. 1110, has the following elements: touching any part of a child (under the age of 14) on the bare skin or through clothing with the intent of arousing or appealing to the lusts of the perpetrator or the child. (Ans., Clerk's Transcript, Dkt. No. 9-3 at 175.) The touching need not be done in a lewd or sexual manner, as explained by No. 1110. (*Id.*) The instruction also gave four predicate incidents of touching Ruiz committed: inserting his penis into Doe; twice rubbing Doe's vagina; and kissing. (*Id.*)

A state court's interpretation of state law binds a federal court sitting in habeas corpus. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). The California Supreme Court has rejected Ruiz's contention that the acts of touching must be in themselves lewd. *People v. Martinez*, 11 Cal. 4th 434, 444 (Cal. 1995.) Intent, not the nature of the touching, is the

9

crucial factor. "[T]he form, manner, or nature of the offending act" is not controlled by statute. *Id.* "[T]he courts have long indicated that section 288 prohibits all forms of sexually motivated contact with an underage child. Indeed, the 'gist' of the offense has always been the defendant's intent to sexually exploit a child, not the nature of the offending act." *Id.* This is so even if the act may have "the outward appearance of innocence." *Id.*, quoting *People v. Hobbs*, 109 Cal. App. 2d 189, 192 (Cal. 1952).

In light of this, Ruiz's claim of ineffective assistance necessarily fails. Because the instruction gave the correct version of state law, any objection would have been rejected. It is both reasonable and not prejudicial for defense counsel to forego a meritless objection. *See Juan H. v. Allen*, 408 F.3d 1262, 1273 (9th Cir. 2005).

Upon an independent review of the record, I conclude that the state court's rejection of this claim was not objectively unreasonable and is entitled to AEDPA deference. The claim is DENIED.

### d. Admission of Messages

Ruiz claims trial counsel rendered ineffective assistance by failing to object on Confrontation Clause grounds to the admission of the electronic messages that he and Jane Doe sent to each other. These messages, he contends, were testimonial hearsay. (Pet., Dkt. No. 1 at 32.)

Ruiz cites no specific message, so I assume that he means the messages described by the state appellate court:

> Between November 14, 2014 and November 16, 2014, [Ruiz] and Jane Doe engaged in many conversations through Facebook. The prosecution introduced those Facebook messages into evidence.
>
> In a Facebook conversation on November 14, [Ruiz] asked Jane Doe when she would turn 13 years old and when she could have a boyfriend. Jane Doe informed [Ruiz] that she would not turn 13 years old until June.
>
> In other Facebook conversations on November 14, [Ruiz] and Jane Doe arranged to meet late that night. [Ruiz] expressed fear that they would be caught meeting, stating that he could be put 'in jail for 15 years for being with a minor girl.' At 12:29 a.m. on November 15, [Ruiz] informed Jane

10

> Doe that he was at her house. At 12:37 a.m. on November 15, Jane Doe responded, 'Okay.' In the next message, sent at 1:46 a.m. on November 15, [Ruiz] said to Jane Doe, 'Until tomorrow, beautiful girl.'
>
> Later on November 15, [Ruiz] sent Jane Doe the following message through Facebook: 'How I wish you were older . . . You are very beautiful. I like your tasty thing.' Jane Doe replied with a smiley face image. [Ruiz] then asked, 'Will you let me touch it well next time?' In other Facebook conversations on November 15, [Ruiz] and Jane Doe expressed their love for each other, and [Ruiz] said Jane Doe caused him 'damage' because she was 'prohibited.'
>
> In the morning on November 16, [Ruiz] sent Jane Doe Facebook messages in which he said he was going to take a shower and in which he invited her to shower with him. Later on November 16, [Ruiz] and Jane Doe sent Facebook messages expressing their love for each other, and [Ruiz] told Jane Doe, 'I want you.' In another Facebook message sent on November 16, [Ruiz] told Jane Doe, '[Y]ou make me want to make love to you.' [Ruiz] also told Jane Doe that he was 'afraid' because she was 'very young.'
>
> In the evening on November 16, [Ruiz] used Facebook to arrange a meeting with Jane Doe. [Ruiz] sent Jane Doe the following message: 'Can you come out so I can see you?' Jane Doe responded, 'Yes.' [Ruiz] informed Jane Doe: 'I will wait for you where we were last night.' [Ruiz] told Jane Doe he would be there in 10 minutes, and she replied, 'Okay.' [Ruiz] then sent Jane Doe the following message: 'I am here. Come.'

(Ans., State Appellate Opinion, Dkt. No. 9-11 at 5-6.)

The Confrontation Clause applies to all out-of-court testimonial statements offered for the truth of the matter asserted, i.e., "testimonial hearsay." *Crawford v. Washington*, 541 U.S. 36, 51 (2004). "Testimony . . . is typically a solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Id.* (internal quotation and citation omitted). "An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." *Id.* While the Supreme Court has not articulated a comprehensive definition of testimonial hearsay, it has said that "[w]hatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id.* at 68. Hearsay that is not testimonial, "while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation

1 Clause." *Davis v. Washington*, 547 U.S. 813, 821 (2006).

None of the messages qualifies as a testimonial statement. None was "a solemn declaration or affirmation made for the purpose of establishing or proving some fact." In *Crawford*'s terms, they are far more akin to a casual statement to an acquaintance than a formal statement to a government officer. Because none of the messages was testimonial, the Confrontation Clause does not apply to them. Any objection to the admission of the messages on Confrontation Clause grounds would almost certainly have been rejected.[4] It is both reasonable and not prejudicial for defense counsel to forgo a meritless objection. *See Juan H. v. Allen*, 408 F.3d 1262, 1273 (9th Cir. 2005). Ruiz's ineffective assistance claim necessarily fails.

Upon an independent review of the record, I conclude that the state court's rejection of this claim was not objectively unreasonable and is entitled to AEDPA deference. The claim is DENIED.

### i. Claims of Ineffective Assistance of Appellate Counsel

Claims of ineffective assistance of appellate counsel are reviewed according to the standard set out in *Strickland*, 466 U.S. 668. A defendant therefore must show that counsel's advice fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, he would have prevailed on appeal. *Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989). Ruiz claims that his appellate counsel rendered ineffective assistance by failing to raise the ineffective assistance of trial counsel because of the claims discussed above.

Appellate counsel does not have a constitutional duty to raise every nonfrivolous issue requested by defendant. *See Jones v. Barnes*, 463 U.S. 745, 751-54 (1983). Appellate counsel will frequently remain above an objective standard of competence and cause his client no prejudice when she declines to raise a weak issue. *Id.*

---

[4] Any hearsay objection to Ruiz's messages would almost certainly have been rejected. Admissions of a party-opponent (here Ruiz) are "not made inadmissible by the hearsay rule." Cal. Evid. Code § 1220.

12

1   As discussed below, none of Ruiz's claims regarding trial counsel has merit. Therefore, his appellate counsel's failure to raise these claims on appeal cannot constitute ineffective assistance of counsel.

Upon an independent review of the record, I conclude that the state court's rejection of this claim was not objectively unreasonable and is entitled to AEDPA deference. The claim is DENIED.

## CONCLUSION

The state court's adjudication of Ruiz's claims did not result in decisions that were contrary to, or involved an unreasonable application of, clearly established federal law, nor did they result in decisions that were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, the petition is DENIED.

A certificate of appealability will not issue. Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Ruiz may seek a certificate of appealability from the Ninth Circuit.

The Clerk shall enter judgment in favor of respondent and close the file.

**IT IS SO ORDERED.**

**Dated:** March 27, 2019

_____
WILLIAM H. ORRICK
United States District Judge